IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
HOT SPRINGS DIVISION

VICKI BENSON o/b/o
JACOB BENSON                                                                    PLAINTIFF

v.                                    Civil No. 04-6154

JO ANNE B. BARNHART,
Commissioner, Social
Security Administration                                                         DEFENDANT

## MEMORANDUM OPINION

**Factual and Procedural Background:**

In the instant case, Vicki Benson (hereinafter "plaintiff"), has appealed the final decision of the Commissioner of the Social Security Administration (hereinafter "Commissioner"), denying her claim on behalf of her minor son, Jacob Benson (hereinafter "claimant"), for supplemental security income (hereinafter "SSI") benefits under § 1602 of Title XVI, *42 U.S.C. § 1381a*. The parties have filed appeal briefs (Doc. # 10 & 11), and this matter is now ready for consideration. In this judicial review, the court must determine whether there is substantial evidence in the administrative record to support the Commissioner's decision. *42 U.S.C. § 405(g)*.

The history of the administrative proceedings is contained in the respective appeal briefs and will not be recounted here except as necessary.

The plaintiff asserts disability due to claimant's attention deficit hyperactivity disorder (hereinafter "ADHD") (T. 171, 62, 90, 104, 127, 130, 122, 115, 148, 151), and adjustment disorder (T. 171, 183, 60, 61, 62, 73, 90, 115, 146, 148, 151). The issue before this Court is whether the Commissioner's decision is supported by substantial record evidence.

**AO72A
(Rev. 8/82)**

The ALJ followed the new sequential evaluation process, set forth in *20 C.F.R. § 416.924*. Under the new standard, a child must prove that he has a medically determinable physical or mental impairment, which results in marked and severe functional limitations, and which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months. *42 U.S.C. § 1382c(a)(3)(c)(I); 20 C.F.R. § 416.906.*

When passing the new law, as it relates to children seeking SSI disability benefits, Congress decided that the sequential analysis should be limited to the first three steps. This is made clear in the House conference report on the law, prior to enactment. Concerning childhood SSI disability benefits, the report states:

> The conferees intend that only needy children with severe disabilities be eligible for SSI, and the Listing of Impairments and other current disability determination regulations as modified by these provisions properly reflect the severity of disability contemplated by the new statutory definition.... The conferees are also aware that SSA uses the term "severe" to often mean "other than minor" in an initial screening procedure for disability determination and in other places. The conferees, however, use the term "severe " in its common sense meaning.

*142 Cong. Rec. H8829-92, 8913 (1996 WL 428614), H.R. Conf. Rep. No. 104- 725 (July 30, 1996)*.

Consequently, under the new law, the analysis ends at step three with the determination of whether the child's impairments meet or equal any of the listed impairments. More specifically, a determination that a child is disabled requires the following three-step analysis. See *20 C.F.R. § 416.924(a)*. First, the ALJ must consider whether the child is engaged in substantial gainful activity. See *20 C.F.R. § 416.924(b)*. If the child is so engaged, he or she

AO72A
(Rev. 8/82)

will not be awarded SSI benefits. See *id.* Second, the ALJ must consider whether the child has a severe impairment. See *20 C.F.R. § 416.924(c)*. A severe impairment is an impairment that is more than a slight abnormality. See *id.* Third, if the impairment is severe, the ALJ must consider whether the impairment meets or is medically or functionally equal to a disability listed in the Listing of Impairments, *20 C.F.R. Part 404, Subpart P, Appendix 1 (the "Listings")*. See *20 C.F.R. § 416.924(c)*. Only if the impairment is severe and meets or is medically or functionally equal to a disability in the Listings will it constitute a disability within the meaning of the Act. See *20 C.F.R. § 416.924(d)*. Under the third step, a child's impairment is medically equal to a listed impairment if it is at least equal in severity and duration to the medical criteria of the listed impairment. 20 C.F.R. § 416.926(a). To determine whether an impairment is functionally equal to a disability included in the Listings, the ALJ must assess the child's developmental capacity in six specified domains. See *20 C.F.R. § 416.926a(b)(1)*. The six domains are: (1) acquiring and using information; (2) attending and completing tasks; (3) interacting and relating with others; (4) moving about and manipulating objects; (5) caring for yourself; and, (6) health and physical well-being. See *20 C.F.R. § 416.926a(b)(1)*.

If the child claiming SSI benefits has marked limitations in two categories or an extreme limitation in one category, the child's impairment is functionally equal to a disability in the Listings. See *20 C.F.R. § 416.926a(b)(2)*. A marked limitation is an impairment that is "more than moderate" and "less than extreme." A marked limitation is one which seriously interferes with a child's ability to independently initiate, sustain, or complete activities. See *20 C.F.R. § 416.926a(e)(2)*. An extreme limitation is "more than marked", and exists when a

-3-

child's impairment(s) interferes very seriously with his or her ability to independently initiate, sustain or complete activities. Day-to-day functioning may be very seriously limited when an impairment(s) limits only one activity or when the interactive and cumulative effects of the impairment(s) limit several activities. See *20 C.F.R. § 416.926a(e)(3)*.

**Discussion:**

This court reviews a decision by an ALJ "to determine whether it is supported by substantial evidence on the record as a whole." *Bailey v. Apfel, 230 F.3d 1063, 1065 (8th Cir.2000); 42 U.S.C. § 405(g)*. Our scope of review is narrow; we must affirm the Commissioner's decision so long as it conforms to the law and is supported by substantial evidence on the record as a whole. *Collins ex rel. Williams v. Barnhart 335 F.3d 726, 729 (8th Cir.2003);Qualls v. Apfel, 158 F.3d 425, 427 (8th Cir.1998)*. Substantial evidence is relevant evidence that reasonable minds might accept as adequate to support the decision. *Hunt v. Massanari, 250 F.3d 622, 623 (8th Cir.2001)*. The issue on appeal is whether there is substantial evidence to support the ALJ's determinations under the three-step sequential test. The undersigned employs the same three-step sequential test as the ALJ to evaluate the evidence and the alleged disability. Because plaintiff does not contest the ALJ's finding regarding substantial gainful activity, we bypass the first step.

Under the second step, we agree that claimant's impairment of ADHD is severe. However, he did not find claimant's adjustment disorder/behavioral problem to be severe. With respect to the ADHD, the pivotal issue remains the third step, namely, whether there is substantial evidence in the record to support the finding that claimant's impairments do not rise to the medical or functional level of severity necessary to equal a disability listed in Appendix 1

AO72A
(Rev. 8/82)

of 20 C.F.R. § 404, Subpart P. See *Pepper ex rel. Gardner v. Barnhart 342 F.3d 853, 855 (8th Cir.2003).*

The regulations provide:

(a) *Basic considerations.* We consider all relevant information (*i.e.,* evidence) in your case record. The evidence [] may include information from medical sources, such as your pediatrician, other physicians, psychologist, or qualified speech-language pathologist; other medical sources not listed in § 416.913(a), such as physical, occupational, and rehabilitation therapists; and nonmedical sources, such as your parents, teachers, and other people who know you.

    *(1) Medical evidence -- (i) General*. Medical evidence of your impairment(s) must describe symptoms, signs, and laboratory findings. The medical evidence may include, but is not limited to, formal testing that provides information about your development or functioning in terms of standard deviations, percentiles, percentages of delay, or age or grade equivalents. It may also include opinions from medical sources about the nature and severity of your impairments. (*See* § 416.927).

    *(ii) Test scores.* We consider all of the relevant information in your case record and will not consider any single piece of evidence in isolation. Therefore, we will not rely on test scores alone when we decide whether you are disabled. (*See* § 416.926a(e)) for more information about how we consider test scores.

*20 C.F.R. § 416.924a(a)(1)(i)-(ii).*

At the time of the administrative hearing, the claimant was 10 years old and was in the fifth grade (T. 167). Both the plaintiff and the claimant appeared at the hearing, represented by counsel (T. 165), but only the plaintiff testified. The administrative hearing was conducted on May 5, 2004 (T. 165-186). The ALJ issued an unfavorable decision on dated August 24, 2004 (T. 11-13). The Appeals Council denied the plaintiff's request for review of the decision by Order entered October 4, 2004, thus making the ALJ's decision the final decision of the Commissioner (T. 5-7).

As has been noted, there are several ways to demonstrate that a child is disabled. *20*

-5-

*C.F.R. § 416.926a(b)*. If the ALJ had found that the claimant had an extreme impairment in one functional area or marked impairments in two functional areas, then he would have been entitled to benefits. *20 C.F.R. § 416.926a(d)*.

Here, in his two-page decision, the ALJ assessed that the claimant has: no limitation in the domains of: health and physical well-being; moving and manipulating objects; and, self care. He was found to have less than a marked limitation in the domains of: acquiring and using information; interacting and relating with others; and, attending and completing tasks (T. 12). After carefully examining the record, the undersigned concludes that the ALJ's determinations are not supported by substantial evidence in the record, particularly in light of the ALJ's disregard as to the claimant's asserted behavioral/adjustment disorder. In fact, the ALJ's only mention of this alleged impairment is when he notes that the claimant was treated at the pediatric psychiatry clinic of Levi Hospital, stating:

> The psychiatrist that saw the claimant, on March 9, 1999, noted that he was having hyperactivity, impulsive behavior and dominating behavior. This was impairing his school and home functioning. The claimant was started on medication and responded favorably.

(T. 11-12). We note that this opinion was made some five (5) years prior to the claimant's hearing.

Claimant's fifth grade teacher, Ms. Robin Chuang, wrote an unsigned letter which was submitted during the administrative hearing, which stated, in part:

> I have noticed a considerable difference in Jacob Benson's behavior and attitude at school. His concentration level has fallen considerably since the beginning of the year. Staying focused and on task has become very difficult for him. He never seems to know where we are or what we are doing during the lesson. This a major difference from the beginning of the year. He is having trouble grasping new concepts and remembering old ones that should now be automatic. His

AO72A
(Rev. 8/82)

> grades have fallen, especially in math, where each concept builds on the last concept.
>
> Jacob's grades are not the only differences I see in him. He is getting into trouble outside of my classroom more. He is always respectful of adults, but sometimes he says inappropriate things to his peers. His attitude towards others is becoming a problem.

(T. 80). This is in stark contrast to the letter submitted by claimant's fourth grade teacher, Ms. Tara Leachman (T. 52-53).

In addition, the claimant was seen for his disorders at both Levi Hospital (T. 81-93), and Community Counseling Services (hereinafter "CCS") (T. 108-130, 144-162). The claimant's last visit of record, with Dr. Paula M. Lynch, M.D. of CCS, took place on March 5, 2004. Claimant's administrative hearing was May 5, 2004 (T. 165). Dr. Lynch opined in her progress note, as follows:

> During spring break there will be an observation and transition from Concerta to Strattera which will be adjusted ... The mother does indicate a good understanding of the rationale for the higher dosage in the 50 mg range and does support this use as there is much evidence based on data that does support the higher range of Strattera with issues of impulsivity and behavioral disturbance that have been aggressive and severe in nature.

(T. 148).

Thus, while the record indicates that claimant's ADHD did respond to treatment (T. 119, 116, 112, 110, 144, 145, 51, 146, 82, 87, 89, 118, 111), there is no similar support in the record with respect to the claimant's adjustment disorder. The ALJ's single statement, to the effect that claimant "was started on medication and responded favorably" is simply belied by the record. The ALJ's failure to consider the adjustment disorder/behavior problems is error.

The Court recognizes that the ALJ's decision may be the same after proper analysis on

AO72A
(Rev. 8/82)

remand, but proper analysis is required. *Groeper v. Sullivan, 932 F.2d 1234, 1239 (8th Cir.1991).*

**Conclusion:**

Accordingly, the ALJ's decision denying benefits to the plaintiff on behalf of the claimant is not supported by substantial evidence of record, and should be reversed. This matter should be remanded to the Commissioner for consideration of the adjustment disorder, diagnosed as early as March, 1999 (T. 81-90). It must be considered both singly and in combination with the claimant's ADHD.

ENTERED this 13th day of March, 2006.

/s/ Bobby E. Shepherd
HONORABLE BOBBY E. SHEPHERD
UNITED STATES MAGISTRATE JUDGE

AO72A
(Rev. 8/82)